FILED
COURT OF APPEALS
DIVISION II

2015 JAN 21 AM 9: 05

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 44816-5-II |
| Respondent, | |
| v. | |
| JASON EVERETT GAMBILL, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Jason Gambill appeals from his conviction for possession of a stolen

motor vehicle. He argues that the trial court infringed on his right to counsel. Because the trial

court abused its discretion by failing to make an adequate inquiry before denying Gambill's request

for substitute counsel, we reverse and remand for a new trial.[1]

---

[1] Gambill also claims trial error relating to prosecutorial misconduct, improper opinion testimony, and infringement of the presumption of innocence. Because we reverse on other grounds, we do not reach these trial-related issues. However, Gambill also argues for the first time on appeal that he was unlawfully seized. Because we reverse and remand for a new trial, Gambill may raise the unlawful seizure issue pretrial.

No. 44816-5-II

## FACTS AND PROCEDURAL HISTORY

On March 7, 2013, Selma Alsalman's car was stolen. Early the following morning, Gambill was seen driving it. Trooper Todd Thornburg contacted Gambill and took him into custody. Gambill was charged with possession of a stolen vehicle.

The trial court found Gambill indigent and appointed David Brown to represent him. Gambill and Brown had a strained relationship. Two weeks before trial, Gambill requested new counsel in a hearing not reflected in the record. At a plea hearing one week before trial, Gambill again requested new counsel for reasons articulated in a letter that he had sent but the trial court had not yet received. The trial court told Gambill that it would consider his request for new counsel when it received the letter.

On April 18, 2013, the trial court reviewed Gambill's letter and held a trial confirmation hearing. Gambill accused Brown of "inadaquit [sic] representation, and insufficient representation," making "[v]ulgar refference [sic]" to him, making "[d]istruthful [sic]" actions in court, violating his constitutional rights, and threatening him and his family. Clerk's Papers at 21. The trial court asked Brown if the attorney-client relationship had deteriorated to the point where Brown could not represent Gambill. Brown replied that Gambill was not speaking to him and that caused him concern. Without conducting further inquiry, the trial court declined to grant new counsel, noting that the charge was "fairly straightforward" and that the letter had only raised "conclusory accusations." Report of Proceedings (RP) (Apr. 18, 2013) at 6. The trial court did not address Gambill except to "suggest . . . that [he] start communicating with [his] attorney." RP (Apr. 18, 2013) at 6.

2

On the morning of trial, Gambill was still not satisfied with Brown's representation. He complained that he had not had the opportunity to review the police reports with Brown, while Brown insisted that they had reviewed the reports together "half a dozen times."[2] RP (Apr. 22, 2013) at 9. Gambill further claimed that he did not understand the charges against him and that Brown had threatened him. He then told the court that

> [Brown] told me I was stupid, told me I was crazy one time, told me I was going to get hurt also another time and I don't know, I don't feel safe being represented by him. It's my life on the line here.

RP (Apr. 22, 2013) at 13. The trial judge[3] responded that Gambill's claims were unbelievable because the judge knew Brown well and Brown would not act in the way Gambill had described. The trial court then offered Gambill a recess of an hour and a half in order to speak with Brown. Gambill was still unsatisfied, and the following exchange occurred:

> MR. GAMBILL: And [Brown has] accused me of committing crimes I'm not even aware of, never heard of in my life. I don't understand how this is representation of me and my defense, my life --
> THE COURT: Maybe if you quit talking and listen to him he can answer those questions for you. But you have to listen to what he says.

RP (Apr. 22, 2013) at 15.

The court took its recess, and Gambill did not speak any further on the record. At the following trial, Brown made no opening statement and presented no evidence.[4] Of the State's

---

[2] The record is not clear what kind of reports Gambill and Brown were referring to, but Gambill's brief indicates that they were referring to the police report and information.

[3] The trial judge was different than the judge who handled the trial confirmation hearing.

[4] At the beginning of trial, Brown stated that he would reserve his opening. However, he never gave an opening.

seven witnesses, Brown cross-examined two: Alsalman and Trooper Thornburg. A jury found Gambill guilty of possession of a stolen motor vehicle. Gambill appeals.

## ANALYSIS

Gambill argues that when he asked for new counsel, the trial court was required to inquire into the reason for his request using "'specific and targeted questions.'" Br. of Appellant at 11 (quoting *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 776-77 (9th Cir. 2001)). He argues that the relationship between himself and Brown completely collapsed and that the Sixth Amendment required the trial court to appoint new counsel, regardless of prejudice. Br. of Appellant at 10 (citing *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80, *cert. denied*, 549 U.S. 1022 (2006)). The State concedes that "there was some type of breakdown" in the attorney-client relationship. Br. of Resp't at 8. However, the State argues that Gambill's request for new counsel was not timely and that Gambill's claims were a "preposterous" attempt to "delay his trial by making wild accusations of absurd conflicts with his attorney." Br. of Resp't at 8-9.

We conclude that the trial court abused its discretion by failing to adequately inquire into the nature and extent of the attorney-client conflict. Accordingly, we reverse Gambill's conviction.

### A. STANDARD OF REVIEW

We review a denial of right to counsel de novo, though we accord appropriate deference to the trial court's determinations of underlying facts. *Cross*, 156 Wn.2d at 605. We generally review trial court decisions relating to the trial court's refusal to appoint new counsel for abuse of discretion. *Cross*, 156 Wn.2d at 607.

4

## B. ADEQUACY OF INQUIRY

The Sixth Amendment ensures a defendant's right to counsel. U.S. CONST. amend. VI. This right has substantial implications for the attorney-client relationship. When the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates the defendant's right to effective assistance of counsel, even if no actual prejudice is shown. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 722, 16 P.3d 1 (2001).

When reviewing a trial court's refusal to appoint new counsel, we consider "'(1) the extent of the conflict, (2) the adequacy of the [trial court's] inquiry, and (3) the timeliness of the motion.'" *Cross*, 156 Wn.2d at 607 (alteration in original) (quoting *Stenson*, 142 Wn.2d at 724). Where the defendant requests the appointment of new counsel, the trial court must have a sufficient basis for reaching an informed decision. *Adelzo-Gonzalez*, 268 F.3d at 777. The trial court has the obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction. *State v. Schaller*, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007), *review denied*, 164 Wn.2d 1015 (2008). Failure to make an adequate inquiry is an abuse of discretion. *United States v. Lott*, 310 F.3d 1231, 1248-50 (10th Cir. 2002), *cert. denied*, 538 U.S. 936 (2003).

Here, Gambill's substitution request was fairly detailed. It contained allegations concerning inadequate representation as well as allegations that the attorney had made threats to Gambill and his family. But the trial court characterized the request as containing only "conclusory accusations." RP (Apr. 18, 2013) at 6. Even so, Gambill's request informed the trial court of the *existence* of a potentially serious conflict. Knowledge of a conflict alone is insufficient for the court to determine whether Gambill and Brown could work together to present an adequate

defense. But if the substitution request does not contain sufficient detail to determine the extent of the conflict, the trial court has a duty to investigate further and to inquire carefully.

While the trial court heard limited comments from Brown and Gambill, it did not conduct a serious investigation into the nature of the attorney-client conflict. The trial court did not perform a detailed inquiry into Gambill's allegations. Instead, the trial court summarily dismissed Gambill's claims without analysis at the trial confirmation hearing and on the morning of trial. RP (Apr. 18, 2013) at 6 ("I'm not granting new counsel at this point. It appears this is a fairly straightforward charge. . . . All I have . . . is conclusory accusations."); RP (Apr. 22, 2013) at 14 ("Here's where we're going to leave this, Mr. Gambill: I have known Mr. Brown for a lot of years. . . . The things you are alleging, frankly, are unbelievable.").

In addition to inquiring about the adequacy of the trial preparation, the trial court should have investigated the threats and name calling that Gambill alleges occurred. Instead, the trial court relied solely on his personal opinion of counsel to dismiss Gambill's claims. Accordingly, the court failed to inform itself of the facts on which to exercise its discretion.

## C. EXTENT OF CONFLICT

When the "relationship between lawyer and client completely collapses," the trial court must substitute new counsel in order to comply with the defendant's Sixth Amendment right to effective assistance of counsel. *Stenson*, 142 Wn.2d at 722. In this case, the trial court's failure to adequately investigate the breakdown of Gambill and Brown's relationship means that we do not know the true extent of the breakdown nor the details of what caused the breakdown with certainty. But the breakdown appears comprehensive and extended well beyond a disagreement of mere trial strategy. The record as described above shows the strong likelihood of a complete

collapse of the attorney-client relationship. In such a circumstance, in the absence of an adequate inquiry into the extent and the basis of the attorney-client conflict, we hold that Gambill need not show a complete collapse of the lawyer-client relationship.[5] *See Stenson*, 142 Wn.2d at 722 (citing *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998)).

## D. TIMELINESS

A request for new counsel is *not* timely if it is made during trial or after significant voir dire has occurred. *Cross*, 156 Wn.2d at 610-11; *Stenson*, 142 Wn.2d at 732. The purpose of this rule is to prevent a defendant from unduly delaying the trial. *State v. Fritz*, 21 Wn. App. 354, 363-65, 585 P.2d 173 (1978), *review denied*, 92 Wn.2d 1002 (1979); *Moore v. Calderon*, 108 F.3d 261, 264 (9th Cir.), *cert. denied*, 521 U.S. 1111 (1997). On the other hand, a defendant's request to proceed pro se made 11 days before trial was timely. *State v. DeWeese*, 117 Wn.2d 369, 372-73, 377, 816 P.2d 1 (1991).

Here, two weeks before trial, Gambill requested new counsel in a hearing not reflected in the record. At a plea hearing one week before trial, Gambill again requested new counsel for reasons articulated in a letter that he had sent from the jail but the trial court had not yet received. On April 18, 2013, the trial court reviewed Gambill's letter and held a trial confirmation hearing. On the morning of trial, Gambill was still not satisfied with Brown's representation and continued to request new counsel. In addition, the charge of possession of a stolen vehicle was straightforward and involved only one day of trial. In such a simple case as this, substitute counsel would not require much time to prepare for trial and the substitution would not have unduly

___

[5] In addition, to the extent that *State v. Lopez*, 79 Wn. App. 755, 767, 904 P.2d 1179 (1995), may require a constitutional harmless error analysis, we disagree with that conclusion when the trial court fails to make an adequate inquiry.

delayed proceedings or otherwise "obstruct[ed] the orderly course of the administration of justice." *Fritz*, 21 Wn. App. at 365. We conclude that Gambill's request was timely.

In conclusion, the trial court failed to conduct an adequate inquiry to fully inform itself before denying Gambill's motion for substitute counsel and overlooked strong and timely evidence of a complete breakdown in the attorney-client relationship. We hold that the trial court abused its discretion by denying Gambill's timely request for new counsel without an adequate inquiry. Accordingly, we reverse the conviction, remand for appointment of new counsel and for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

MAXA, J.

MELNICK, J.