Filed 4/5/16  In re Emily P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re EMILY P., a Person Coming Under the Juvenile Court Law. | D069191 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ003877) |
| v. | |
| MICHELLE V., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Daniela Davidian, Deputy County Counsel, for Plaintiff and Respondent.

Michelle V. appeals an order denying her request to substitute appointed counsel in the juvenile dependency case of her minor daughter Emily P. She contends the juvenile court abused its discretion by denying her request. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 2015, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under Welfare and Institutions Code section 300, subdivision (j)[1] on behalf of four-year-old Emily. The Agency alleged that Emily's stepbrother David W. had bruising on his lower back consistent with inflicted injury. The Agency concluded that David was at substantial risk of suffering serious physical harm inflicted nonaccidentally under section 300, subdivision (a) and that Emily was at substantial risk of suffering abuse or neglect under section 300, subdivision (j).[2]

Emily lived with Joel P. and his wife Heather P. in El Cajon, California. Joel is Emily's biological father. He was granted full legal and physical custody of Emily in family court proceedings. Michelle, Emily's biological mother, lives in Merced, California. As part of the custody order, Michelle was granted supervised visitation, but she reported she had limited contact with Emily because Joel told her that Emily was upset after Emily talked with her. Michelle and Joel reported a history of substance abuse, including use of methamphetamine together. Michelle said their relationship was

---

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    David is not the subject of this appeal and will be discussed only where necessary.

tumultuous, including incidents of domestic violence. Michelle told the Agency she last used alcohol or drugs in August 2014.

At Emily's detention hearing, the juvenile court found the Agency had made a prima facie showing under section 300, subdivision (j). Emily was placed with her paternal great-aunt.

In advance of the jurisdiction and disposition hearing, Joel filed several written motions seeking, among other things, to compel Michelle to appear in person for testimony and to strike various statements (including those made by Michelle) from the Agency's reports. Michelle, through her appointed counsel, Indra Bennett, filed written oppositions to the motions.

At a settlement conference, the parties announced an agreement regarding jurisdictional and dispositional issues. The Agency requested that its petition regarding David be amended to allege jurisdiction based on general neglect under section 300, subdivision (b), rather than physical abuse under section 300, subdivision (a). The Agency also requested that its petition regarding Emily be amended to reflect the amended petition regarding David. Joel, Michelle, and Heather submitted on the allegations of the relevant petitions, and the court made true findings. Emily was placed with Joel and Heather.

Michelle continued to have supervised visitation. During the settlement conference, Michelle's counsel asked the court to confirm that Joel could not supervise her visitation with Emily. Joel did not disagree; he simply asked that the supervisor be agreeable to both Michelle and Joel. The court then ordered that "the visitation will be

3

supervised by a person that's agreed upon by both [Michelle] and [Joel]. If they can't agree on who the supervisor will be, then the Agency will determine who the supervisor is, but the Agency needs to approve that person anyway." Joel then sought clarification that he could "possibly be involved as long as it's peaceful contact." Michelle's counsel opposed, asking that "[Michelle's] visits take place separately from [Joel]." The court agreed with Michelle. The court's minute order stated, "Visitation between the child and the mother shall be as follows: Supervised. Supervisor is to be chosen by social worker, [Joel], and [Heather]." The court's minute order did not discuss approval by Michelle.

Two months later, the Agency reported that Michelle was having telephonic visitation with Emily twice per week, supervised by Emily's therapist or an Agency social worker. Michelle's counsel then set a special hearing at Michelle's request to substitute counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Michelle's counsel subsequently took the hearing off calendar.

Two weeks after her first request, Michelle made another request to substitute counsel. The court held a special hearing. At the hearing, Michelle explained that she felt she was treated poorly by the Agency social worker responsible for the case. Michelle was prescribed hydrocodone, an opioid pain medication, following knee surgery. The social worker told Michelle she should not take hydrocodone because she was an "addict." Michelle felt that the social worker's use of the term "addict" was slanderous. The next day, the social worker called Michelle for her telephonic visitation with Emily. The social worker had Joel on the line as well. Michelle believed Joel's

4

presence violated the court's orders. Michelle said Joel was on the line again the day before the hearing. Michelle refused to speak with Emily with Joel on the line.

Michelle wanted Bennett, her counsel, to submit the results of urine and hair follicle drug tests to prove she was not currently abusing drugs, but Bennett refused. Michelle also believed Bennett was ineffectual because she had not resolved the issue with Joel's presence on Michelle's telephonic visitation with Emily. Michelle said it was difficult for her to contact Bennett, they communicated primarily by text message, and Bennett did not adequately answer her questions or explain the reasons why she made certain decisions.

Bennett explained that she had worked extensively on this case and frequently communicated with Michelle. Bennett felt it was Michelle's best interests for her to research Michelle's problems with the Agency before scheduling a special hearing to address visitation. Bennett agreed with Michelle that they "have had a very severe communication breakdown" and that Michelle "does not trust" her. Bennett agreed that Joel should not supervise Michelle's telephonic visitation with Emily. Bennett contacted the Agency to address Michelle's concerns. The Agency social worker responded that Joel was not supervising; he was merely the point person to coordinate contact with Emily. Bennett said she did not believe Joel should be on the call at all during Michelle's visitation and she was continuing to work with the Agency to resolve the issue. Bennett said she told Michelle of her efforts, but Michelle said she was not aware of them.

The court stated that it did not believe Bennett had been ineffective in her representation of Michelle. The court then asked Bennett, "[I]f you feel there's been a

5

breakdown of communication that cannot be repaired, I would want to hear that. Do you believe that's where you are at this point?" Bennett answered, "Yes, because I feel that we communicate extensively on the phone and via text message. I feel that I don't just give opinions. I may say, well, this is my opinion regarding certain things, but this is all legal advice. And especially at this point, because [Michelle] does not trust me in any regard, that is my understanding. I don't know how I can effectively communicate for longer durations or at greater frequencies than I have already. [¶] So I don't -- even though we are communicating within the basic sense of what communicating means, I don't know that we are getting across to each other at all at this point, because we have such totally different versions of reality of this case and what happens during our phone conversations and text messages."

The court denied Michelle's request to substitute counsel. The court explained, "So [Michelle], I cannot find, and I'm looking at the record here at the motions that Ms. Bennett has filed on your behalf, at the recommendations and the orders that have been made. I do find that there may be a communication issue, but it appears to the Court in part it is because your frustration with the social worker is spilling over to Ms. Bennett." The court found that personality conflicts or disagreements over strategy were insufficient to grant Michelle's request.

Michelle requested that she be allowed to represent herself. The court granted Michelle's request and relieved Bennett. Michelle appeals.[3]

DISCUSSION

"Juvenile courts, relying on the *Marsden* model, have permitted the parents, who have a statutory and a due process right to competent counsel, to air their complaints about appointed counsel and request new counsel be appointed." (*In re M.P.* (2013) 217 Cal.App.4th 441, 455 (*M.P.*).) Authority interpreting the requirements of *Marsden* is therefore persuasive here. (See *In re Z.N.* (2009) 181 Cal.App.4th 282, 289 (*Z.N.*).)

In the *Marsden* context, "[a] defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. Substitution of counsel lies within the court's discretion. The court does not abuse its discretion in denying the motion unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." (*People v. Smith* (2003) 30 Cal.4th 581, 604 (*Smith*).) Similarly, in criminal cases, "[a] defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense.

---

3     Michelle attached a number of documents to her notice of appeal, including a statement of the reasons she sought to substitute counsel, drug testing results, a letter from her therapist, registers of actions from criminal cases involving Joel, minute orders from Emily's dependency case, and an Agency service log. Most of these documents were not in front of the juvenile court when it denied Michelle's request, and Michelle does not appear to rely on them in her appeal. We will therefore not consider them. (See, e.g., *People v. Berryman* (1993) 6 Cal.4th 1048, 1070.)

7

[Citation.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' 'When a defendant chooses to be represented by professional counsel, that counsel is "captain of the ship" and can make all but a few fundamental decisions for the defendant.' " (*People v. Welch* (1999) 20 Cal.4th 701, 728-729.) "A defendant may not effectively veto an appointment of counsel by claiming a lack of trust in, or inability to get along with, the appointed attorney. [Citation.] Moreover, the trial court need not conclude that an *irreconcilable* conflict exists if the defendant has not tried to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness." (*Smith*, at p. 606.)[4]

Michelle has shown no abuse of discretion in the court's order denying her request to substitute counsel. The record demonstrates that Bennett's representation was not deficient, and Michelle does not appear to argue otherwise. Instead, Michelle argues that she had an irreconcilable breakdown in communication with Bennett. We disagree. The juvenile court could reasonably conclude Bennett and Michelle had not suffered an irreconcilable breakdown in communication. The record shows that Bennett and Michelle communicated frequently up to the date of the hearing on Michelle's request. While Bennett and Michelle apparently had difficulty understanding each other, such difficulty does not amount to an irreconcilable breakdown in communication. Bennett's

---

4       In addition to the justification for the request, reviewing courts generally assess the timeliness of the request and the adequacy of the trial court's inquiry into the request. (See, e.g., *Z.N.*, *supra*, 181 Cal.App.4th at p. 294.) The parties here agree Michelle's request was timely, and Michelle does not contend the juvenile court failed to adequately inquire into Michelle's reasons for requesting substitution of counsel. We therefore need not address these factors.

comments at the hearing show she was concerned that she could not give Michelle the type and frequency of communication Michelle wanted. But Michelle's wishes were not the standard by which the juvenile court should measure their relationship; Bennett's ability to effectively represent Michelle was. And, in any event, Bennett's comments—while entitled to due consideration—were not binding on the juvenile court or conclusive on the question of her ability to represent Michelle. (See *Z.N.*, *supra*, 181 Cal.App.4th at pp. 289, 295 [finding no abuse of discretion even where counsel claimed "we have no attorney-client relationship"].) The juvenile court was well within its discretion to determine that the difficulties Bennett and Michelle were experiencing were not so severe as to affect Bennett's ability to effectively represent Michelle.[5]

Michelle also contends she had a legitimate lack of trust in Bennett that justified substitution. She claims it was difficult for her to reach Bennett on the telephone and Bennett did not act quickly to resolve the conflict over Joel's presence on her calls with Emily. We conclude the juvenile court did not abuse its discretion by finding that Bennett's actions did not cause an irreconcilable conflict between herself and Michelle. Michelle's disagreement with Bennett's decision not to submit drug testing results amounts to a disagreement concerning tactics, which is insufficient to compel substitution

---

[5]     Michelle points out that she chose to forgo appointed counsel, and represent herself in the juvenile court, rather than continue with Bennett after her request to substitute counsel was denied. While such a decision may show a breakdown in the attorney-client relationship, it is not sufficient in and of itself to demonstrate that the juvenile court abused its discretion in denying Michelle's request. For the reasons we explain, the trial court did not abuse its discretion. Any breakdown in the attorney-client relationship was a result of Michelle's own conduct that created a conflict.

9

of counsel.  (*Smith*, *supra*, 30 Cal.4th at p. 606.)  And, although they did not speak often by telephone, Michelle and Bennett communicated extensively by text message.  " '[T]he number of times one sees [her] attorney, and the way in which one relates with [her] attorney, does not sufficiently establish incompetence.' "  (*M.P.*, *supra*, 217 Cal.App.4th at pp. 458-459.)  Nor does it establish an irreconcilable conflict on the facts presented here.  Similarly, although Michelle was frustrated over the state of her telephonic visitation, Bennett had been working on the issue during the two weeks since the issue arose.  Such a delay in resolving the issue or bringing it to the court's attention should not reasonably cause a rupture in the attorney-client relationship that would necessitate substitution.  The juvenile court was entitled to find that any breakdown in the attorney-client relationship was a result of Michelle's own conduct, which is not a sufficient ground for substitution of counsel.  "A defendant may not effectively veto an appointment of counsel by claiming a lack of trust in, or inability to get along with, the appointed attorney."  (*Smith*, at p. 606.)  " '[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict.' "  (*Ibid.*)

A comparison with *United States v. Adelzo-Gonzales* (9th Cir. 2001) 268 F.3d 772, a federal criminal case Michelle relies on, is instructive.  In that case, the court found "there was a serious breach of trust and a significant breakdown in communication that substantially interfered with the attorney-client relationship.  [Defendant] recounted bad language and threats made by his attorney, including statements that the attorney would 'sink him for 105 years' and that the attorney would testify against him."  (*Id.* at p. 779.)  "The appointed counsel suggested to the court that his client had been coached,

10

expressly called [the defendant] a liar on two separate occasions, and openly opposed the motions to substitute counsel." (*Ibid.*)  Bennett's alleged conduct falls far short of these facts.

As noted above, "The court does not abuse its discretion in denying the motion unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." (*Smith*, *supra*, 30 Cal.4th at p. 604.)  Michelle has not shown her right to counsel would have been substantially impaired by Bennett's continued representation of her.[6]  She has therefore shown no abuse of discretion in the juvenile court's denial of her request to substitute counsel.

### DISPOSITION

The order is affirmed.

MᴄCONNELL, P.J.

WE CONCUR:

HALLER, J.

MᴄDONALD, J.

---

[6]     In her reply brief, Michelle claims that the breakdown in communication impaired her right to adequate counsel because she "was left without counsel after the *Marsden* motion was denied."  But it was Michelle who requested that Bennett be discharged after her request to substitute counsel was denied.  Any breakdown in communication did not deprive Michelle of counsel; she chose to forgo counsel herself.