**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carlos ADELZO–GONZALEZ,**
**Defendant–Appellant.**

**No. 99–50152.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2001

Filed Sept. 26, 2001

Phillip A. Trevino, Law Offices of Phillip A. Trevino, Beverly Hills, California, for the defendant-appellant.

John S. Gordon and Michael S. Lowe, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: Before: HUG and B. FLETCHER, Circuit Judges, and ILLSTON, District Judge.*

ILLSTON, District Judge:

Carlos Adelzo–Gonzalez appeals his conviction following a plea of guilty to criminal charges of hostage taking, transporting illegal aliens, and harboring illegal aliens. At issue is whether the district court abused its discretion in denying Adelzo–Gonzalez's repeated requests for appointment of substitute counsel. We conclude that the district court did not make an adequate inquiry and failed to recognize the material breakdown in trust and communication between defendant and his court-appointed attorney. Despite clear indications of an irreconcilable conflict between defendant and his attorney, the district court denied Adelzo–Gonzalez's requests for a new attorney on three occa-

---

* The Honorable Susan Illston, United States District Judge for the Northern District of California, sitting by designation.

sions. We hold that this was an abuse of discretion and accordingly reverse and remand.

## BACKGROUND

Adelzo–Gonzalez was arrested on July 13, 1998 in Los Angeles, California, in connection with a scheme to kidnap illegal aliens and demand ransom payments from their families. The government initially charged defendant with conspiracy to harbor illegal aliens, transporting illegal aliens, and harboring and concealing illegal aliens, but substituted more serious counts of hostage taking in a superseding indictment. The district court appointed a private attorney to represent defendant throughout the criminal proceedings.

Adelzo–Gonzalez is a native of Guatemala and required a Spanish interpreter to communicate with his attorney and the trial judge. He was dissatisfied with his appointed counsel from early in the representation and made three motions for appointment of a new attorney. All of the motions were denied.

The district court heard Adelzo–Gonzalez's first motion after arraignment on the first superseding indictment on October 29, 1998. Shortly before the arraignment, Adelzo–Gonzalez had sent a letter directly to the court requesting a new attorney. There was already some indication of a rift between Adelzo–Gonzalez and his appointed counsel at the arraignment. Defendant had hesitated in entering his plea and appeared not to understand the nature of the proceeding, when the appointed counsel stated to the court:

> I feel he understands the nature of the proceedings. I also feel, though, that he has been advised by someone, or has his own ideas, as far as what he wants to do. At this point, I tried to explain to him that he should enter a plea of guilty or not guilty—I'm sorry. He should enter

a plea of guilty or not guilty. And I'm running into the same problem that I run into *ad nauseam,* in lockup, which is—it's like a computer spins, and the answer comes out again, "I do not understand, I do not understand," but I feel he does understand.

Appellant's Excerpts of Record ("ER") 17–18. Before finally entering his plea, Adelzo–Gonzalez asked the trial judge if the appointed counsel would continue as his lawyer if he pleaded not guilty.

After completing arraignment, the district court asked the prosecutor to leave and considered defendant's motion for appointment of new counsel. The court acknowledged Adelzo–Gonzalez's letter and asked if he wanted to add anything. Defendant declared that he and his appointed counsel were unable to understand each other. He further explained that animosity had arisen in their relationship. As an example, defendant recounted an occasion where the appointed counsel used bad language and threatened defendant:

> When I asked him whether he could give me the indictment, he said why the fuck did I want the indictment.... And he told me that if I did not accept the agreement, that there would be—he was going to try to sink me for 105 years so that I wouldn't be able to see my wife and children.

Appellant's ER 21–22.

The court then heard from the appointed counsel, who responded:

> I am sufficiently prepared [to present a defense], Your Honor. I am fully informed as to the facts of the case. There is nothing that would cause me to relinquish—to cause me to ask this Court to relinquish my role in this case. For the record, the things that were said are lies. And, unfortunately, it appears that the fellow is perfectly

coached by someone, all with the exception of, Your Honor, for the use of the expletive deleted. He and I have had a few words, but this young man's life is in my hands.

Appellant's ER 22–23. Without further inquiry, the district court denied the motion to substitute counsel, finding that there was no breakdown of communication and that the appointed counsel "not only is willing to proceed with a vigorous defense, but he is more than capable of doing so, with or without [defendant's] cooperation."

Adelzo–Gonzalez made his second motion, again by written letter to the court, less than four weeks later, which the district court treated as a continuation of the prior motion for appointment of substitute counsel. The court provided a copy of Adelzo–Gonzalez's letter to his appointed counsel, who had not seen it before, and once again held an *ex parte* hearing to address anything defendant wanted to add. Defendant only asked questions concerning the nature of the charges against him. The court told Adelzo–Gonzalez to direct any questions concerning his defense to his attorney and conducted no further inquiry into the basis of the motion. The district court made no findings and did not explicitly rule on the motion.

At the final pretrial status conference on December 14, 1998, Adelzo–Gonzalez made his last request for substitution of counsel. In the course of the conference, defendant indicated to his attorney that he wanted to address the court. The appointed counsel interjected, stating, "Your Honor, in my opinion, he is about to obstruct justice. I'd request that he not address the Court. He is about to obstruct justice.... He is about ready to subject himself to another federal crime." The court nonetheless allowed Adelzo–Gonzalez to speak and the following exchange ensued:

THE DEFENDANT: ... I sent a letter, a paper, that I wrote, and I would like you to give me one more chance to see if I could get another defense attorney because I don't feel that I get along with him. And if you don't grant me another defense attorney, I rather just be found guilty just on my own, without a defense attorney, because I don't feel I can have an understanding with him. The last time that he went to see me, he used profanity.

\* \* \*

THE COURT: Now, Mr. Adelzo–Gonzalez, what is it, again about your relationship with [the appointed counsel] that you feel he is not able to provide you with competent representation?

THE DEFENDANT: The reason why, I don't have an understanding with him. I feel like he's always pressuring me, like he is forcing me. He mentions my family, and he says that if I ever talk about him, he's going to testify against me. And will I ask you for one more chance, if you can give me a chance so that I can come with another defender, or, if not, then I'll just represent myself. I have had a lot of problems with him, he has never helped me at all. And the way he is representing me, well, I'd rather just represent myself.

THE COURT: All right. Now there are a couple of things that you've raised.

First, as to your relationship with [the appointed counsel], I'm going to deny that request. One, it's untimely. We're just talking about jury selection proceedings, and it's doubtful that any other lawyer would ever be able to get ready for trial.

Second, you really haven't explained to me in sufficient detail what it is about his representation of you that shows that he is not a competent lawyer and

prepared to fully defend you. You've raised issues about profanity which don't, frankly, shock me. My sense here, for the record, is that you've been unwilling to listen to him, and, evidently, you didn't wish to consider a lower charge. That is, that would have given you 24 to 30 months.

Because of the delay in accepting that, the charges are now higher, and that causes you to believe somehow that [the appointed counsel] is responsible for that, when simply he's just giving you the sad news that the prosecutor has raised the stakes.

Appellant's ER 53, 56–57.

The district court next turned to Adelzo–Gonzalez's request to discharge the appointed counsel and proceed *pro se.* Adelzo–Gonzalez explained, "If you do not grant me another attorney ... I rather just plead guilty right now, and not go to trial." Appellant's ER 59. When the court clarified that defendant wanted to proceed *pro se* just to plead guilty, the appointed counsel interrupted again: "I'm volunteering this. I'm requesting the Court to continue me on, to continue me on with him." Appellant's ER 60. The court advised defendant that it was in his

best interest to keep his attorney if he wanted to plead guilty.

Adelzo–Gonzalez agreed to plead guilty to all counts with the appointed counsel staying on as his attorney. He continued, however, to display dissatisfaction with his appointed counsel during the pleading colloquy. When asked whether he had sufficient time to discuss all aspects of his case with his attorney, Adelzo–Gonzalez replied, "[e]ven if I haven't," and indicated that the appointed counsel never asked him about the case and was not truthful about prior deals. The appointed counsel responded by again openly accusing Adelzo–Gonzalez of lying. Defendant pleaded guilty to · all counts in the first superseding indictment and was sentenced to 63 months incarceration followed by three years of supervised release.

## ANALYSIS

■■■ Adelzo–Gonzalez argues that the district court erred each time it denied his motions for appointment of substitute counsel, depriving him of his Sixth Amendment right to counsel. Although Adelzo–Gonzalez raises these arguments as two separate grounds on his direct appeal, we treat them as interrelated and review only the district court's decision to deny substitute counsel.[1]

---

1. To the extent that Adelzo–Gonzalez argues independently that the district court violated his Sixth Amendment right to effective assistance of counsel, we note that such a claim is generally inappropriate on direct appeal. *See United States v. Ross,* 206 F.3d 896, 900 (9th Cir.2000) ("[Claims of ineffective assistance of counsel] normally should be raised in habeas corpus proceedings, which permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted.") (internal citations and quotation marks omitted). There are two exceptions to this general rule: (1) "when the record on appeal is sufficiently developed to permit review and determination of the issue"; and (2) "when the representation is so inadequate that it obviously denies a defendant his Sixth

Amendment right to counsel." *Id.* (internal citations and quotation marks omitted). We need not decide this matter because we conclude that the district court erred in denying Adelzo–Gonzalez's motions to substitute counsel. *See United States v. Moore,* 159 F.3d 1154, 1158–59 & n. 3 (9th Cir.1998) (same analysis applies to review of district court's denial of motion to substitute counsel and determination whether irreconcilable conflict exists depriving defendant of Sixth Amendment right to counsel); *United States v. D'Amore,* 56 F.3d 1202, 1204 (9th Cir.1995), *overruled on other grounds by United States v. Garrett,* 179 F.3d 1143, 1145 (9th Cir.1999) (en banc) ("[I]t is a violation of the Sixth Amendment to deny a motion to substitute

██ We review a district court's denial of a motion for substitution of counsel for abuse of discretion. *United States v. Castro,* 972 F.2d 1107, 1109 (9th Cir.1992). The district court's factual findings are reviewed under the clearly erroneous standard. *United States v. Wadsworth,* 830 F.2d 1500, 1505–06 (9th Cir.1987).

We have consistently applied three factors in reviewing a district court's denial of a motion to substitute counsel: the adequacy of the district court's inquiry, the extent of any conflict, and the timeliness of the motion. *See United States v. Musa,* 220 F.3d 1096, 1102 (9th Cir.2000); *United States v. Corona–Garcia,* 210 F.3d 973, 976 (9th Cir.2000); *United States v. Walker,* 915 F.2d 480, 483 (9th Cir.1990), *called into question by United States v. Nordby,* 225 F.3d 1053, 1059 (9th Cir.2000) (noting that "[o]ur existing precedent is overruled to the extent it is inconsistent with" *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). (We are sensitive to the fact that one panel cannot overrule another.)

## A. Adequacy of Inquiry

██ Before ruling on a motion to substitute counsel due to an irreconcilable conflict, a district court must conduct "such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern." *United States v. Garcia,* 924 F.2d 925, 926 (9th Cir.1991) (internal quotation and citation omitted); *see also Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970). The inquiry must also provide a "sufficient basis for reaching an informed

decision." *United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986). Thus, the district court may need to evaluate the depth of any conflict between defendant and counsel, the extent of any breakdown in communication, how much time may be necessary for a new attorney to prepare, and any delay or inconvenience that may result from substitution. *See D'Amore,* 56 F.3d at 1205.

Adelzo–Gonzalez made three motions to substitute his attorney, six weeks, two weeks, and one day before the scheduled trial date. Each motion was made by written letter on Adelzo–Gonzalez's independent initiative. The district court acknowledged on the record that it received the letters, but the letters do not appear on the docket and were not made part of the record on appeal. The district court did not recite the text of the letters during its inquiry, so the precise content of the letters is not available to this Court. We must rely on the reasons Adelzo–Gonzalez raised before the district court. However, we are able to discern enough from the hearing transcripts to evaluate the first and last motions for substitution of counsel.[2]

██ We hold that the district court's inquiries into Adelzo–Gonzalez's first and last motions were inadequate. The district court asked only open-ended questions and put the onus on defendant to articulate why the appointed counsel could not provide competent representation. While open-ended questions are not always inadequate, in most circumstances a court can

counsel and an error that must be reversed, regardless of whether prejudice results.") (citations omitted).

**2.** The second motion was treated as a continuation of the original motion. As with all other inquiries, Adelzo–Gonzalez was allowed to articulate reasons other than what was already stated in his letters why the appointed

counsel was not able to provide competent representation. Defendant did not make such an articulation but asked the court questions about his defense and the facts of his case. Without knowing the content of Adelzo–Gonzalez's letter, it cannot be determined whether the district court's inquiry was adequate.

only ascertain the extent of a breakdown in communication by asking specific and targeted questions. *See United States v. Torres–Rodriguez,* 930 F.2d 1375, 1381 (9th Cir.1991), *abrogated on other grounds by Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). There were compelling reasons here to delve deeper into the nature of Adelzo–Gonzalez's relationship with the appointed counsel.

During the district court's inquiry into both the first and last motions, there were clear indications of serious discord and friction between Adelzo–Gonzalez and his attorney. Adelzo–Gonzalez expressly stated that he and the appointed counsel were not getting along, that the appointed counsel did not pay attention to him and had used bad language, and that the appointed counsel had threatened "to sink me for 105 years so that I wouldn't be able to see my wife and children." At the hearing on his third motion, Adelzo–Gonzalez emphasized his dissatisfaction with the appointed counsel by stating that he would rather represent himself than continue with the appointed counsel.

The appointed counsel's responses during the inquiries were also informative of the nature of his relationship with Adelzo–Gonzalez. He opposed Adelzo–Gonzalez's motions and even went so far as to try to prevent his client from making the motion at the final pretrial hearing. The appointed counsel openly called Adelzo–Gonzalez a liar and suggested that Adelzo–Gonzalez had been coached by someone. The display of antagonism was not limited only to the inquiries. After Adelzo–Gonzalez had expressed some confusion during arraignment on the first superseding indictment, the appointed counsel volunteered to the

court that Adelzo–Gonzalez might be feigning ignorance. He opined that Adelzo–Gonzalez did understand the proceeding but that "he has been advised by someone, or has his own ideas," and that "it's like a computer spins, and the answer comes out again, 'I do not understand, I do not understand,' but I feel he does understand."

Despite such striking signs of a serious conflict, the district court made no meaningful attempt to probe more deeply into the nature of Adelzo–Gonzalez's relationship with the appointed counsel. The court failed to explore other sources, such as the interpreters, to verify the accusations Adelzo Gonzalez had made against his attorney. The court's questions to both the appointed counsel and Adelzo–Gonzalez focused on counsel's competence and capacity to provide adequate representation. The court's factual findings reflect this misplaced emphasis; it explicitly held in denying both motions that the appointed counsel was competent and fully prepared to provide the necessary quality of representation. There was too much emphasis on the appointed counsel's ability to provide adequate representation and not enough attention to the status and quality of the attorney-client relationship. *See Musa,* 220 F.3d at 1102 ("Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense."); *D'Amore,* 56 F.3d at 1206 ("[A] court may not deny a substitution motion simply because it thinks current counsel's representation is adequate.").[3]

The perfunctory inquiries did not provide the district court a sufficient basis to determine the extent of the breakdown in communication. *See Moore,* 159 F.3d at 1160 ("The court did give both parties a chance to speak and made limited inquiries

---

**3.** We recently underscored the importance of evaluating the status of the attorney-client relationship, not simply the competence of

counsel, in deciding a motion to substitute counsel. *United States v. Nguyen,* 262 F.3d 998 (9th Cir.2001).

to clarify what was said. However, the court made no inquiries to help it understand the extent of the breakdown."). We conclude that the district court failed to conduct an adequate inquiry into either Adelzo–Gonzalez's first or last motions to substitute his attorney.

## B.  Extent of the Conflict

Although the district court did not inquire into the extent of the conflict between Adelzo–Gonzalez and the appointed counsel, it is evident that there was a serious breach of trust and a significant breakdown in communication that substantially interfered with the attorney-client relationship. Adelzo–Gonzalez recounted bad language and threats made by his attorney, including statements that the attorney would "sink him for 105 years" and that the attorney would testify against him. The district court did not ascertain whether these accusations were true, but Adelzo–Gonzalez made it clear on the record that he held little if any trust in his attorney. *See McKee v. Harris,* 649 F.2d 927, 932 (2nd Cir.1981) ("While loss of trust is certainly a factor in assessing good cause, a defendant seeking substitution of assigned counsel must nevertheless afford the court with legitimate reasons for the lack of confidence.").

The extent of the conflict can also be inferred from the appointed counsel's responses and conduct. *See Williams,* 594 F.2d at 1260 (defendant's claims of bad relationship and lack of communication "were not only not refuted by counsel, but the response of counsel tended to confirm that the course of the client-attorney relationship had been a stormy one with quarrels, bad language, threats, and counterthreats"). The appointed counsel suggested to the court that his client had been coached, expressly called Adelzo–Gonzalez a liar on two separate occasions, and openly opposed the motions to substitute counsel.

In *Frazer v. United States,* 18 F.3d 778, 783 (9th Cir.1994), we held that the district court erred by refusing to substitute counsel, where counsel called his client a "stupid nigger son of a bitch" and threatened to provide substandard performance if the defendant persisted in demanding to go to trial. "*All* advice, assistance, and guidance provided after such an outburst would be fatally suspect, as would the 'willingness' of a defendant to follow the attorney's lead." *Id.* (emphasis in original). Although the relationship between Adelzo–Gonzalez and the appointed counsel was not marked by racial acrimony, the appointed counsel's open attack on his client's credibility and opposition to the motions to substitute counsel had a similar consequence. Faced with the possibility of losing his final motion to substitute counsel, Adelzo–Gonzalez stated that he would rather proceed unrepresented than with the appointed counsel as his attorney.

▄▄▄ The appointed counsel was not acting in Adelzo–Gonzalez's interest and virtually abandoned his representation of Adelzo–Gonzalez with respect to the motions to substitute counsel. Adelzo–Gonzalez was left to make the motions by himself, while the appointed counsel took an adversary and antagonistic stance. We encountered a similar situation in *Wadsworth,* where a defendant's attorney expressed bitterness about his client's lack of confidence in him and took an adversary and antagonistic position to the client's motion to substitute counsel. We held that it was error for the district court to deny substitution in these circumstances and that the court should have suspended the proceedings and appointed an attorney for the defendant for purposes of the pending motion. *Wadsworth,* 830 F.2d at 1510–11. The appointed counsel's open opposition left Adelzo–Gonzalez effectively unrepresented at the hearings on the mo-

tions. Our suggestion in *Wadsworth* applies here with equal force. The district court should have stayed the proceeding and appointed a separate attorney to advise and represent Adelzo–Gonzalez during the inquiries.

The district court's finding that there was no break in communication between Adelzo–Gonzalez and his attorney was clearly erroneous. The relationship between Adelzo–Gonzalez and the appointed counsel was antagonistic, lacking in trust, and quarrelsome. *See Williams*, 594 F.2d at 1260 (sufficient conflict where defendant chose to proceed *pro se* because the "client-attorney relationship had been a stormy one with quarrels, bad language, threats, and counter-threats"); *Brown* 424 F.2d at 1169 (sufficient conflict where defendant "was forced into trial with a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, in any manner whatsoever, communicate"). Here as well, there was an irreconcilable conflict between Adelzo–Gonzalez and the appointed counsel which substantially interfered with the appointed counsel's ability to provide adequate representation.

C. Timeliness of the Motion

Adelzo–Gonzalez first moved for substitution of counsel approximately six weeks in advance of trial. This motion was timely, and the district court did not hold otherwise.

■■■ The district court found Adelzo–Gonzalez's last motion, made one day before trial, untimely. The fact that the motion was made on the eve of trial alone is not dispositive. *See United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir.1993), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir.1999) (en banc) (district court may not deny motion to substitute counsel solely because it was late); *Torres–Rodriguez*,

930 F.2d at 1380–81 (reversing conviction despite request for substitution made on day of trial). "[W]hen a motion is made on the day of trial, the court must make a balancing determination, carefully weighing the resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice." *D'Amore*, 56 F.3d at 1206.

The district court made no inquiry into the extent of delay or inconvenience from bringing in a new attorney on the day before trial. Nor was any attempt made to determine whether there was any means, perhaps involving the appointed counsel's cooperation, of permitting the substitution without causing excessive delay. Although our ability to evaluate the timeliness of this last motion is hampered by the court's inadequate inquiry, we cannot conclude that any delay which would have been required to allow for substitution of attorneys justified denial of the motion. Here, as in *United States v. Nguyen*, the district court "failed to adequately balance Nguyen's Sixth Amendment rights against any inconvenience and delay from granting the continuance." 262 F.3d 998, 1004.

The seriousness of the conflict between Adelzo–Gonzalez and the appointed counsel weighs heavily against denying the motion based solely on delay. Adelzo–Gonzalez had made two prior motions to replace his attorney, relying on essentially the same reasons each time, and had declared that he wanted to continue *pro se* if his last motion was denied. The appointed counsel's conduct in response to the motion did nothing to refute Adelzo–Gonzalez's demonstration of an irreconcilable conflict. At this point, the attorney-client relationship had come to an impasse, strongly justifying a continuance to allow for a new attorney to take on Adelzo–Gonzalez's defense. We conclude that the last motion to substitute counsel was timely.

## CONCLUSION

The district court failed to conduct an adequate inquiry into Adelzo–Gonzalez's first and last timely motions to substitute counsel. It consequently failed to recognize and act on a serious conflict between Adelzo–Gonzalez and his attorney which prevented the attorney from providing adequate representation. Accordingly, we hold that the district court abused its discretion in denying the two motions and requiring Adelzo–Gonzalez to continue with the appointed counsel's representation as he pleaded guilty.

The denials of the first and last motions to substitute counsel are REVERSED, Adelzo–Gonzalez's conviction and sentence are VACATED, and the case is REMANDED for proceedings consistent with this opinion.